# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br><br>$40,955.00 IN U.S. CURRENCY,<br><br>　　　　　　　　　　Defendant. | CASE NO. 05cv1901 DMS (POR)<br><br>**ORDER (1) DENYING MOTION TO DISMISS DUE TO SPOLIATION OF EVIDENCE OR FOR ALTERNATIVE SANCTIONS; AND (2) DENYING MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**<br><br>[Doc. No. 18]<br><br>[Doc. No. 20] |

　　　Pending before this Court are two motions by Claimants Basel El Farra, Fatima El Farra and Rawia El Farra: (1) motion to dismiss due to spoliation of evidence or for alternative sanctions; and (2) motion to suppress evidence and statements. The United States has filed oppositions to the motions. Claimants have filed their replies. The Court finds the matters suitable for submission without oral argument pursuant to Local Civil Rule 7.1(d)(1). For the following reasons, the Court DENIES both motions.

## I.
## BACKGROUND

　　　The following facts are derived from Plaintiff's complaint for forfeiture *in rem* and the parties' submissions with respect to the motions at issue. On May 28, 2005, the Oceanside Police Special

Enforcement Section Narcotic Unit searched the residence of Mohammad Basel El Farra ("Mohammad"), located at 436 Moro Hills Road, Fallbrook, California. The officers did so pursuant to a search warrant issued by the San Diego Superior Court. The state search warrant and supporting affidavit were sealed by the Superior Court. Mohammad lived at the residence with his parents, Claimants Basel El Farra ("Basel") and Fatima El Farra ("Fatima"). Claimant Rawia El Farra ("Rawia") is Mohammad's sister; she did not reside at the residence at the time of the search.

During the search, law enforcement officers located the following items in Mohammad's bedroom: marijuana, a large baggie containing Psilocybin, numerous scales, a heat sealing machine, packaging material, and firearms. Also, on the floor in Mohammad's bedroom closet, the officers found a safe. Upon inquiry, Mohammad provided the officers the safe combination. Inside the safe, the officers found $27,644.00 in U.S. currency, a California Driver's license belonging to Mohammad, and a pink slip in Mohammad's name. The officers also found a lock box inside the safe, containing $1,846.00 in U.S. currency and a Rolex watch. Additionally, the officers located $10,000.00 on top of the safe under some clothes. The officers found more money in the clothing in the closet, totaling $1,275.00, and $190.00 in Mohammad's wallet. Altogether, the officers confiscated 1,337 bills from Mohammad's bedroom, totaling $40,955.00. During the interview after the search, Mohammad informed the officers that he does sell marijuana and usually sells half ounces or less to people he knows. Mohammad also told the officers that the money in the safe belonged to him, and that most of it was proceeds from drug sales.

Besides Mohammad, the officers also interviewed Basel. According to the police report, Basel told one police officer that he had money in a small safe located in the big safe, in an amount of approximately $18,000.00-$20,000.00. Basel also claimed that the safe contained other things belonging to him, including an Omega brand watch, pink slips and keys. The police report, however, indicates that when Basel was interviewed by another police officer, he said he had approximately $30,000.00 in cash in the small safe and that the money was all heat sealed. According to the report, however, none of the money was heat sealed. Basel also claimed that the watch in the safe was a Rolex. When the officers asked Basel for the safe combination, he admitted he did not know.

Claimant Rawia contends she gave her brother $20,000.00 to hold for her in the safe.

1   On October 5, 2005, Plaintiff instituted administrative forfeiture proceedings, pursuant to 21
2   U.S.C. § 881(a)(6) and § 841, by filing a complaint for forfeiture *in rem* in this Court against the
3   property seized, $40,955.00. [Doc. No. 1.] On October 20, pursuant to Rule C(6) of the Supplemental
4   Rules, Federal Rules of Civil Procedure, Claimants, along with Mohammad, filed claims asserting
5   ownership of the seized money. [Doc. Nos. 5-8.] Mohammad, however, withdrew his claim on
6   February 28, 2006. [Doc. No. 14.] Claimants Basel, Fatima and Rawia, through their counsel, submit
7   the present two motions.

## II.

### MOTION TO DISMISS DUE TO SPOLIATION OF EVIDENCE

10  Claimants' motion asks the Court to dismiss the complaint for forfeiture, arguing that law
11  enforcement officers failed to make photocopies of the 1,337 bills seized during the search. At the
12  outset, the Government contends Claimants lack standing to challenge the forfeiture proceedings.

13  **A.     Standing**

14  Article III standing must be determined as a threshold matter in every federal case. *United*
15  *States v. Real Property Located at 5208 Los Francisco Way, Los Angeles, CA.*, 385 F.3d 1187, 1191
16  (9th Cir. 2004). To have standing to challenge a forfeiture, a claimant must allege he has an
17  ownership or other interest in the forfeited property. *United States v. $122,043.00 in United States*
18  *Currency*, 792 F.2d 1470, 1473 (9th Cir. 1986). "The claimant's burden under Article III is not a
19  heavy one; the claimant need demonstrate only a colorable interest in the property, for example, by
20  showing actual possession, control, title, or financial stake." *Real Property Located at 5208 Los*
21  *Francisco Way, Los Angeles, CA.*, 385 F.3d at 1191. Thus, "'the claimant need not prove the full
22  merits of [his] underlying claim. All that needs to be shown is a facially colorable interest in the
23  proceedings . . .'" *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158 (2nd Cir. 1994).

24  This Court concludes Claimants have standing to challenge the forfeiture because they have
25  alleged adequate facts showing a "facially colorable interest" in the property. *See Torres*, 25 F.3d at
26  1158. Claimants Basel and Fatima reside at 436 Moro Hills Road. During the interview subsequent
27  to the search, Basel informed the police that approximately $18,000.00-$20,000.00 in the lock box
28  inside the safe belonged to him. In their reply, Claimants provided documentary evidence indicating

1  that, on July 18, 2005, each filed a Claim Opposing Forfeiture with the Drug Enforcement
2  Administration.  Attached to these claims is Basel's declaration attesting that the money seized
3  included $20,346.00, proceeds from operating a business called Happy Jug.  Also attached to the
4  claims is Rawia's declaration that the safe included $20,000.00 belonging to her business, R&L
5  Distribution.  Pursuant to Rule 6(C) of the Supplemental Rules, on October 20, 2005, Claimants filed
6  claims with this Court opposing the forfeiture.  Given the factual submissions detailed in Claimants'
7  reply papers, this Court concludes Claimants have sufficiently alleged a "colorable interest" in the
8  money seized.  *See United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1057 (9th Cir. 1994)
9  (*superseded by statute on other grounds*) ("[a] claimant need not explain this interest in detail,
10 however, so long as he does something more than conclusorily state that he has some undefined
11 'interest.'")

12      The United States contends Claimants cannot establish a "colorable interest" in the seized
13 money, and that, at best, "they are unsecured creditors of Mohammad El Farra and therefore do not
14 have standing."  (Opposition to Mt. to Dismiss at 5.)  Plaintiff's analysis misapprehends the legal
15 standard governing the question of standing.  Plaintiff points out, among other things, that Claimants
16 were not in possession of the money because they did not know the combination to the safe which
17 contained the money, and that the safe was in Mohammad's closet.  Relying on such evidence,
18 Plaintiff argues that "[c]laimants have the burden of showing that the actual money seized was their
19 money," and concludes that they have failed to do so.  But to have standing, "'the claimant need not
20 prove the full merits of [his] underlying claim.  All that needs to be shown is a facially colorable
21 interest in the proceedings . . .'" *Torres*, 25 F.3d at 1158.  Plaintiff's argument demands too much,
22 i.e., that Claimants prove the "the full merits of [their] underlying claim."

23      **B.    Spoliation of Evidence**

24      Claimants argue dismissal of the complaint for forfeiture is appropriate because law
25 enforcement officers failed to make photocopies of the 1,337 bills seized, thereby depriving them of
26 the ability to present their defense.  Claimants assert that had the currency been preserved, the "series"
27 number on the bills would establish that the money was "old" and had been saved for many years.
28 Therefore, according to Claimants the money could not be proceeds from recent drug transactions.

"Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002) (citing *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001)). There is no dispute that federal district courts have the inherent power to impose sanctions for spoliation of evidence. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). In deciding whether to impose sanctions for spoliation of evidence, courts generally consider four factors. The first factor is whether the responsible party "had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed." *United States v. Kitsap*, 314 F.3d 995, 1001 (9th Cir. 2002) (quoting *Akiona v. United States*, 983 F.2d 158, 161 (9th Cir. 1991)). The second factor is whether the spoliator's conduct was intentional. *Medical Laboratory Management Consultants v. American Broadcasting Cos.*, 306 F.3d 806, 824 (9th Cir. 2002). The third factor inquires whether the spoliator acted in bad faith, while the fourth and last factor asks whether the opposing party has suffered any prejudice as a result of the spoliation of evidence. *See Silvestri*, 271 F.3d at 593.

Considering the factors above, this Court concludes that sanctions are not warranted. Even assuming that the evidence at issue – the "series" number on the bills – is admissible at trial, it cannot be said that the Government's failure to photograph the bills was in bad faith. Claimants argue: "the 'destruction' of the evidentiary value of the currency was done by depositing it in a bank within days of its seizure, and after Mr. El Farra had told the officers the money was his and he had saved it for years." (Reply In Support of Mt. to Dismiss at 7.) In essence, Claimants contend that Plaintiff destroyed the evidence by depositing the money in the bank. But Claimants have not established that the Government was on notice that the "series" number on the bills was "potentially relevant" to the litigation. *Kitsap*, 314 F.3d at 1001. Nor have Claimants presented any facts suggesting the Government intended to deprive Claimants of the means to prove their case. Because the Government was not informed of the Claimants' potential need for the evidence, its conduct does not reflect bad faith. Furthermore, sanctions are not warranted because the evidence, even if it had been preserved, cannot be said to be so probative as to support the claim that the money was not proceeds from drug transactions.

///

### III.

### MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

Claimants request that the Court suppress all evidence seized during the search at 436 Moro Hills Road, because "plaintiff has failed to produce an affidavit which establishes probable cause for the search." (Mt. to Suppress Evidence and Statements at 3.) In response, the United States argues that the Claimants lack standing to challenge both the forfeiture and the search warrant. The Court has already determined that Claimants have standing to challenge the forfeiture. The remaining issue is whether Claimants have standing to challenge the search warrant.

The Supreme Court has held that the Fourth Amendment exclusionary rule applies in civil forfeiture cases. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965). It is well-established that Fourth Amendment rights are personal rights which may be asserted only by a defendant who has a legitimate expectation of privacy in the invaded place or the thing searched. *See Rakas v. Illinois*, 439 U.S. 128, 133-134, 143 (1978). Thus, to succeed on a motion to exclude evidence based on a claim of unreasonable search and seizure, the defendant must first establish a personal, reasonable and legitimate expectation of privacy in the particular area searched or thing seized. *United States v. Payner*, 447 U.S. 727, 731 (1980). This burden requires the defendant to show two things. First, the defendant must hold an actual subjective expectation of personal privacy. Second, this expectation must be one that society is prepared to recognize as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979).

Having reviewed the factual allegations at issue, this Court concludes none of the Claimants have standing to challenge the search. Even though Basel and Fatima owned and resided at the subject residence, they do not have standing to challenge the search because the facts as presented by both parties indicate that only Mohammad's private bedroom and bathroom were searched. The police report discloses that all property seized came from Mohammad's bedroom. Specifically, the seized currency came from the safe located in Mohammad's closet, from clothes in the closet which also belonged to Mohammad, and from his wallet. The evidence also indicates that neither Basel nor Fatima knew the combination of the safe. Moreover, the parties do not dispute that Mohammad's bedroom has a separate entrance from the outside. Given these facts, it is apparent that Basel and

Fatima do not have a legitimate expectation of privacy in the area searched. Therefore, they do not have standing to challenge the search warrant.

Claimants acknowledge that the police searched only "a bedroom in the home" but argue that Basel and Fatima have standing to challenge the search because "they owned and lived" in the house. (Reply In Support of Mt. to Suppress at 4.) For support, Claimants cite *Jones v. United States*, 362 U.S. 257 (1960), contending in essence that anyone who is "'aggrieved' by an unlawful search" has standing to challenge it. *Jones*, however, was long ago overruled by the Supreme Court. In *Rakas v. Illinois*, 439 U.S. 128 (1978), the Supreme Court altered the standing requirement set out in *Jones*, holding that the defendant must have had a legitimate expectation of privacy in the place searched to have standing. The *Rakas* Court thus overruled the "automatic standing" rule in *Jones*.

Citing *Jones*, Claimants rely on automatic standing and do not attempt to establish that they had a legitimate expectation of privacy in Mohammad's bedroom. Claimants argue: "it is difficult to fathom how plaintiff can seriously argue the owners of the residence, who reside in the residence don't have standing." (Reply In Support of Mt. to Suppress at 4.) But the Supreme Court has counseled against automatically conferring standing on owners of the searched property. *See Rakas*, 439 U.S. at 144; *see also United States v. Salvucci*, 448 U.S. 83, 91 (1980) ("While property ownership is clearly a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated [], property rights are neither the beginning nor the end of this Court's inquiry.") The Supreme Court unequivocally held that the test for standing is whether the "illegal search [] violates the rights of those who have 'a legitimate expectation of privacy in the invaded place," not whether the defendant owns the place being searched. *Salvucci*, 448 U.S. at 91 (citing *Rakas*, 439 U.S. at 140).

Rawia also does not have standing to challenge the search of the residence. As Plaintiff points out, Rawia did not reside at the residence. Nor was she present during the search. Therefore, it cannot be said that Rawia has a legitimate expectation of privacy in the residence. *See United States v. Lockett*, 919 F.2d 585, 588 (9th Cir. 1990) (defendant who did not reside at or show a proprietary interest in a residence, and who could not show joint control or supervision of the property, lacks standing to challenge a search.) Rawia, however, claims she has standing to challenge the search

Case 3:05-cv-01901-DMS-POR   Document 26   Filed 10/13/06   PageID.168   Page 8 of 8

because "she stored her personal property" at the residence. The mere fact that Rawia claims ownership of the money seized does not confer standing. *See United States v. Pulliam*, 405 F.3d 782, 785 (9th Cir. 2005) ("the mere fact that Pulliam 'claimed ownership' of the gun does not confer standing upon him to seek its suppression.") Accordingly, none of the Claimants have standing to challenge the search warrant.

## IV.
## CONCLUSION

For the reasons discussed above, the Court DENIES Claimants' motions.

**IT IS SO ORDERED.**

DATED: October 13, 2006

HON. DANA M. SABRAW
United States District Judge

cc:  all parties
     Judge Porter

- 8 -   05cv1901